[Cite as *State v. Bozek*, 2018-Ohio-4945.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-P-0028** |
| LAWRENCE J. BOZEK, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2010 CR 0295.

Judgment: Affirmed.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Kristina Reilly,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Lawrence J. Whitney,* Lawrence J. Whitney Co., L.P.A., 137 South Main Street, #201, Akron, OH 44308 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Lawrence Bozek, appeals from the judgment on sentence entered by the Portage County Court of Common Pleas. The main issue in this appeal is whether the offenses and firearm specifications of which appellant was convicted should have merged for sentencing. For the reasons that follow, we affirm.

{¶2} In May 2010, appellant was indicted for two counts of attempted murder (Count 1 being attempted purposeful murder and Count 2 being attempted felony

murder), each count being a felony of the first degree and each containing a firearm specification.

{¶3} The following month, in June 2010, appellant was charged in a supplemental indictment with two additional counts of attempted murder (Count 3 being attempted purposeful murder and Count 4 being attempted felony murder), each count being a felony of the first degree; two counts of felonious assault (Counts 5 and 6), each count being a felony of the second degree; and kidnapping (Count 7), a felony of the first degree. Each count in the supplemental indictment included a firearm specification.

{¶4} Appellant pled not guilty and not guilty by reason of insanity. Subsequently, he stipulated to a psychiatric report concluding that he is sane and was sane at the time of the offenses and that he is competent to stand trial.

{¶5} On August 13, 2010, appellant pled guilty to attempted purposeful murder (Count 1) and attempted felony murder (Count 2), along with the firearm specification to each count. The trial court accepted appellant's guilty plea and found him guilty. Pursuant to the parties' joint sentencing agreement, the court sentenced appellant to seven years in prison for each attempted murder count, each sentence to run consecutively to the other. The court also sentenced him to three years for each firearm specification, each sentence to run consecutively to the other. The court ordered the sentences for the attempted murder convictions to run consecutively to the sentences for the specifications, for a total of 20 years in prison. Appellant did not appeal his conviction or his sentence.

{¶6} Sixteen months later, on December 1, 2011, appellant filed a motion for a delayed appeal. In *State v. Bozek*, 11th Dist. Portage No. 2011-P-0101, 2012-Ohio-870

(*Bozek I*), this court denied the motion due to appellant's failure to provide this court with any reasons to justify waiting so long to initiate a direct appeal. *Id.* at ¶7.

{¶7} Meanwhile, on November 23, 2011, appellant filed a petition for post-conviction relief. During a status hearing on the petition in 2014, the parties discussed *State v. Nolan*, 141 Ohio St.3d 454, 2014-Ohio-4800, in which the Supreme Court of Ohio held that attempted felony murder is not a cognizable crime in Ohio. Following the hearing, the trial court granted appellant's motion to withdraw his petition.

{¶8} On January 29, 2015, appellant filed a second petition for post-conviction relief, which the trial court overruled. Appellant appealed this ruling in *State v. Bozek*, 11th Dist. Portage No. 2015-P-0018, 2016-Ohio-1305 (*Bozek II*). While *Bozek II* was pending, appellant filed a motion for a new trial and to vacate his sentence. The trial court overruled that motion, and appellant also appealed this ruling in *State v. Bozek*, 11th Dist. Portage No. 2015-P-0055, 2016-Ohio-1365 (*Bozek III*).

{¶9} On March 28, 2016, in *Bozek II*, this court reversed appellant's conviction, holding that, because attempted felony murder is not a cognizable crime, the trial court lacked authority to sentence appellant and to enter an order of conviction on that count and thus, his conviction of that offense was void. *Id.* at ¶21. Further, this court held that appellant's guilty plea was void in its entirety. *Id.* at ¶27. This court ordered that, on remand, the parties would be in the same position as if no plea agreement had been entered and the trial court had not taken any action on the plea, and all counts of the indictment and the supplemental indictment would be reinstated. *Id.*

{¶10} Appellant appealed this court's decision in *Bozek II*, but the Supreme Court of Ohio declined to accept jurisdiction at 146 Ohio St.3d 1490, 2016-Ohio-5585.

3

{¶11} On March 31, 2016, this court dismissed *Bozek III* (appellant's appeal of the trial court's denial of his motion for a new trial and to vacate his sentence).

{¶12} This matter proceeded to a bench trial. Melinda Bozek, appellant's wife, testified that on May 4, 2010, she came home from work at about 4:00 p.m. She was living in a two-story residence with appellant and their 12-year old child.

{¶13} Upon entering the house, Melinda went upstairs to change out of her work clothes and do the laundry, and appellant followed her. Appellant confronted Melinda accusing her of having an affair. This was a recurrent theme of their marriage. Appellant would accuse her of cheating on him; Melinda would deny it; appellant would not believe her; and the discussion would escalate into a heated argument. Melinda did not want to have the same argument again so she did not respond.

{¶14} Melinda put their dirty clothes in a laundry basket while appellant kept accusing her of having an affair. In order to get a reaction from Melinda, appellant threw the laundry basket down the stairs to the next landing. She went downstairs; put the clothes back in the basket; went to the laundry room; and put the laundry in the washer.

{¶15} Melinda then went in the living room, sat on the couch, and began watching television. Appellant walked in front of her, picked up the remote control, and threw it at her with such force he caused a large red bruise on her forehead.

{¶16} Appellant then walked into the kitchen and Melinda followed him. She stopped in the living room just outside the dining area in the kitchen and asked him, "what is wrong with you?" He did not answer and, instead, took out his gun, raised his arm, and shot her. Although Melinda testified she could not remember where on her body he hit her at that time, based on the circumstantial evidence discussed below, he

4

shot her three times in the chest/abdomen area.[1] Melinda said to appellant, "I can't believe you shot me. I can't believe you shot me."

{¶17} Melinda testified she walked toward the chair in the living room near an end table on which a cell phone was placed. She was shot in the leg and indicated this injury occurred when she fell in the living room before calling 911. She picked up the phone, dropped it, and it went behind the chair. She then went behind the chair, picked up the phone, and called 911.

{¶18} A Portage County Sheriff dispatcher testified she received Melinda's 911 call at 7:13 p.m. The state played the recording of this call for the court. Melinda's voice was extremely weak and failing and she was out of breath as she told the dispatcher that her husband shot her. Melinda asked for help. The dispatcher told Melinda to stay on the phone, but Melinda said, "I don't know if I can." Melinda said, "he shot me several times." The dispatcher asked her where appellant was, and Melinda said, "upstairs." In response to the dispatcher's questioning, Melinda said her husband shot her with a .9 mm handgun. Melinda stayed on the phone with the dispatcher for one minute and thirty seconds. During that time, there was no shooting and appellant was apparently not in the room with Melinda. The trial court found this was a break in appellant's assault on Melinda.

{¶19} During the sentencing hearing, the trial court noted: "There was a clear distinction of time, a minute and a half that [Melinda] * * * was on the 911 call. [Appellant] left. She assumed he went upstairs. If you look at the totality of the

---

1. This is supported by the fact that Melinda's other injuries are accounted for in the record. Further, the medical records show her chest and abdominal injuries were inflicted at close range, and the record shows this first shooting incident was the only time Melinda was standing just a few feet in front of appellant.

evidence, it's pretty clear that's what he did. He may have reloaded, more than likely reloaded."[2]

{¶20} Suddenly, while Melinda was still on the phone with the dispatcher, appellant returned to the living room, started shooting again, and the phone went dead. In the trial court's written guilty finding, the trial court found that, based on the injuries to Melinda's hand and the damage to the phone and battery in the phone, the phone was shot out of her hand.

{¶21} Lieutenant Gregory Johnson of the Portage County Sheriff's Office testified that, listening to the 911 recording with a special hearing device, he heard a gunshot right before the call terminated.

{¶22} Melinda decided she had to try to leave the house because appellant obviously had not "snapped out of it" and she was afraid that if she stayed, he would shoot her in the head. When she started to get up, appellant shot at her and a bullet "grazed" the top of her head.

{¶23} Melinda went to the front door and walked out of the house, leaving blood on the door knob. She decided to go to her parent's house, which was next door to theirs, but still a good distance away. She said she lost a lot of blood and was very weak.

{¶24} Melinda's adult brother, Terry, met her at the back door of their parents' home. Melinda said she needed help and asked him to call 911. The state played the recording of the 911 call made by Terry seconds after he met Melinda at the door. Terry told the dispatcher that his sister is bleeding and needs help. He said his sister

---

2. This is supported by the fact that, while the gun holds a maximum of 11 bullets – ten in the clip and one in the chamber, officers found eight spent shells in the kitchen, four live rounds in the magazine, and another live round in the chamber, for a total of 13 rounds.

"crawled over here" and "just crawled up to the door." He said she is laying on her back at their door, was shot in the stomach, was having difficulty breathing, could barely talk, and was "talking delirious."

{¶25} Through all this, appellant never came over to the house and did nothing to try to help Melinda.

{¶26} Lieutenant Scott Witkosky of the Portage County Sheriff's Office responded to Melinda's parents' home and found her lying behind the residence on a concrete slab. She told him that when she left the house, appellant was yelling at her that he was going to kill himself. The emergency squad arrived; determined Melinda had been shot six times with three of the gunshots being in the chest/abdomen area; and transported her to Akron City Hospital where she was treated by the trauma unit.

{¶27} Lt. Johnson testified he responded to the scene of the shooting at about 8:00 p.m. Appellant was still inside the house and refusing to come out. Officers blocked off nearby roads in efforts to secure the area. Lt. Johnson obtained appellant's phone number and for the next four hours attempted to negotiate with him to surrender.

{¶28} During these conversations, appellant admitted he shot Melinda, but said it was an "accident." He said he had fallen, which caused the gun to discharge. He admitted he fired multiple rounds at Melinda, some of which struck her while others did not. Appellant repeatedly asked about Melinda's condition, but, according to Lt. Johnson, he appeared more worried about how her condition would affect him.

{¶29} As of midnight, Lt Johnson was unsuccessful in coaxing appellant out of the house. At that time, the Metro SWAT team took over negotiations with appellant. However, they too were unsuccessful until they used tear gas, which caused appellant to finally surrender at about 4:00 a.m.

{¶30} Dr. Richard George, Chief of the Trauma Service Department at Akron City Hospital, testified they had evidence that Melinda sustained gunshot wounds between the thorax and abdomen and evidence of hemorrhage. As a result, he performed an exploratory laparotomy, which required an incision in Melinda's abdomen. He observed injuries to her liver and hemorrhage (bleeding) from several injuries to her liver. The injuries were so extensive, she lost over one-half of her blood. The doctor said that if they had not performed this procedure, she would have bled to death.

{¶31} The doctor said that Melinda sustained three gunshot wounds to her chest and the area between her abdomen and chest, and these injuries were life-threatening. She also sustained gunshot wounds to her shoulder, upper chest wall, both hands, and her thigh, and a hematoma to her forehead. These injuries were not life-threatening.

{¶32} Dr. George said that two bullets remain in her body, one in the right chest wall and another in the back of her abdomen. Another bullet hit her spine, fracturing that bone and, as it did, the bullet shattered, leaving bullet fragments in her spine.

{¶33} Sheriff's Deputies and BCI agents processed the crime scene that morning. They recovered the gun appellant used to shoot Melinda, which was a .22 caliber Ruger Mark II semi-automatic pistol. They also found opened boxes containing about 250 .22 caliber shells in an open drawer in a dresser in the upstairs master bedroom.

{¶34} BCI agents testified the handgun appellant used to shoot Melinda holds a maximum of ten rounds in the clip and one in the chamber. At the scene, the agents found eight spent casings from the gun, four live rounds in the magazine, and one live round that the SWAT team had removed from the gun.

8

{¶35} At the lab, the Ruger was found to be operable and all eight shells removed from the scene were found to have been fired from that pistol. Four fired bullets were also recovered from the scene that were also fired from this gun.

{¶36} The 250 unfired cartridges found in the box in the dresser drawer were the same brand and caliber as the fired cartridges and fired bullets found at the scene.

{¶37} BCI agents also found the cordless phone with a battery pack, both of which sustained bullet damage. The phone, which had blood stains on it, was struck by one bullet that went through it and the battery pack and out the other side.

{¶38} Appellant presented no witnesses or exhibits and the state's evidence was thus undisputed.

{¶39} The trial court issued an eight-page judgment entry in which the court made highly-detailed findings of fact and found appellant guilty of Counts 1 and 3, attempted purposeful murder, and Counts 5 and 6, felonious assault, with the accompanying firearm specifications, as alleged in the remaining counts of the indictment, but found him not guilty of kidnapping.

{¶40} At sentencing, the trial court sentenced appellant to five years in prison for Count 1, attempted purposeful murder, and three years for the firearm specification to run consecutively to one another; five years for Count 3, attempted purposeful murder, and three years for the firearm specification to run consecutively to one another and consecutively to the aforementioned sentence; three years for Count 5, felonious assault, and three years for the firearm specification to run concurrently to one another and consecutively to the aforementioned sentences; and three years for Count 6, felonious assault, and three years for the firearm specification to run concurrently to one

another and consecutively to the aforementioned sentences, for a total of 22 years in prison.

{¶41} Appellant appeals his sentence, asserting five assignments of error. For his first, he alleges:

{¶42} "The trial court's sentence violated the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, in that the resentencing after remand, exceeded the original sentence, and the trial court failed to justify the increased sentence."

{¶43} Appellate review of a felony sentence is governed by R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶1. That statute provides:

{¶44} The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence * * * given by the sentencing court.

{¶45} The appellate court may * * * modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

{¶46} (a) That the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14 * * *;

{¶47} (b) That the sentence is otherwise contrary to law.

{¶48} Appellant argues the trial court violated his constitutional rights by re-sentencing him on remand because the court sentenced him to a two-year longer prison term than his original sentence without giving reasons to support the increased sentence. Appellant relies on *North Carolina v. Pearce*, 395 U.S. 711 (1969), in which

10

the United States Supreme Court held that, in order to ensure an increased sentence on remand is not the result of a trial judge's vindictiveness,

> **{¶49}** whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal. *Id.* at 726.

**{¶50}** However, appellant's reliance on *Pearce* is misplaced. Twenty years later, in *Alabama v. Smith*, 490 U.S. 794 (1989), the United States Supreme Court revisited this issue in the context presented here, namely, a re-sentencing to a greater prison term following a trial where the defendant had originally been sentenced on a guilty plea. In *Smith*, the defendant had pled guilty to rape and burglary and, in exchange, the remaining sodomy charge was dismissed. He was sentenced to concurrent terms totaling 30 years in prison. Thereafter, he withdrew his guilty plea and went to trial on all three counts. He was convicted and sentenced to life in prison for burglary, a concurrent life term for sodomy, and a consecutive term of 150 years for rape. The state court held the increased sentence violated *Pearce* and raised a presumption of vindictiveness. However, the Supreme Court reversed, holding that "no presumption of vindictiveness arises when the first sentence was based upon a guilty plea, and the second sentence follows a trial." In support of its holding, the Court stated:

> **{¶51}** [W]hen a greater penalty is imposed after trial than was imposed after a prior guilty plea, the increase in sentence is not more likely than not attributable to the vindictiveness on the part of the sentencing judge. Even when the same judge imposes both sentences, the relevant sentencing information available to the judge after the plea will usually be considerably less than that available after a trial. *Smith, supra*, at 801.

**{¶52}** The *Smith* Court noted that during a trial, the trial court can gather "a fuller appreciation of the nature and extent of the crimes charged." *Id.* Further, the Court noted that "after trial, the factors that may have indicated leniency as consideration for the guilty plea are no longer present." *Id.*

**{¶53}** Here, the original sentence was imposed after appellant pled guilty, but the re-sentencing occurred after a trial. Thus, pursuant to *Smith*, in this case there was no "presumption of vindictiveness," and the trial court was not required to give any reasons for its increased sentence. Rather, the burden was on appellant to demonstrate actual vindictiveness. *State v. Adams*, 7th Dist. Mahoning No. 13 MA 130, 2014-Ohio-5854, ¶18. However, he failed to reference any evidence of actual vindictiveness on the part of the trial judge.

**{¶54}** Moreover, several things changed from the time of appellant's plea. First, at appellant's original sentencing hearing, the state agreed to a 20-year prison term, which was part of appellant's plea deal. However, at appellant's second sentencing hearing, the state recommended that appellant be sentenced to prison for 32 years.

**{¶55}** Second, Melinda only spoke briefly at the plea hearing. Since appellant was pleading guilty, she was not asked to and did not advise the court of the horrendous details of his crimes. However, when the court sentenced appellant after his trial, it did so after having heard Melinda testify about the heinous nature of his crimes.

**{¶56}** Third, as appellant acknowledged at his guilty plea hearing, when a defendant pleads guilty, it saves the victim from having to testify in court. However, any

12

consideration the trial court gave appellant in sparing Melinda from testifying when he pled guilty no longer existed once she was forced to testify at trial.

**{¶57}** In light of these circumstances and the fact that appellant failed to prove actual vindictiveness, the trial court did not err in sentencing appellant to a two-year greater sentence after his trial than it did after his plea.

**{¶58}** Accordingly, appellant's first assignment of error is without merit.

**{¶59}** As appellant's second and third assigned errors are related, they are considered together. They allege:

**{¶60}** "[2.] The trial court erred by failing to merge the attempted murder counts (One and Three) and the felonious assault counts (Five and Six) and the attendant firearm specifications for each count for reason that (sic.) the counts are allied offenses of similar import under R.C. 2941.25; all in violation of appellant's protection afforded by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits (sic.) the imposition of multiple punishments for the same offense.

**{¶61}** "[3.] The trial court erred in finding that a separate animus and a separate mens rea existed when appellant stopped shooting and left the dining room during the 911 call resulting in the violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution and said finding was against the weight of evidence."

**{¶62}** Appellant argues the trial court erred in finding his conduct consisted of two parts separated by the 911 call and in not merging the two attempted murder counts into the two felonious assault counts and in not merging the specifications.

13

{¶63} R.C. 2941.25 reflects the General Assembly's intent to prohibit or allow multiple punishments for two or more offenses resulting from the same conduct. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, ¶11.  R.C. 2941.25 provides:

{¶64} (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment * * * may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶65} (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment * * * may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶66} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, the Ohio Supreme Court held:

{¶67} A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance - in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, [or] (3) the offenses were committed with a separate animus or motivation. *Ruff*, *supra*, at ¶25.

{¶68} We review the trial court's merger ruling de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶28.

{¶69} The facts in this case are similar to those presented in *State v. Gates*, 5th Dist. Fairfield No. 14-CA-60, 2015-Ohio-4950.  The victim in *Gates* testified that after the defendant shot her, she begged him not to shoot her again.  He then aimed the rifle, pulled the trigger, and shot her a second time.  The trial court found that the two felonious assault offenses would not merge because there were two shots separated in

14

time under circumstances in which different parts of the victim's body were impacted. Thus, the trial court found there was separation in time, action, and intent. The Fifth District affirmed, stating, "Based on the testimony of Mrs. Gates, the shots were two separate actions, separated by time. This is not a case where a shooter fired multiple shots in close succession from an automatic weapon." *Id.* at ¶35. The appellate court also held that each offense caused separate, identifiable harm. *Id.* at ¶36. The court noted, "Brenda Gates lost her left leg to amputation as a result of the first shot. Her right leg was saved, but she had multiple surgeries to save her right leg * * *." *Id.*

**{¶70}** As the Ohio Supreme Court held in *Ruff, supra*, if any one of the three factors identified in that case is true, the offenses will not merge. The first factor is that "the offenses are dissimilar in import or significance – in other words, each offense caused separate, identifiable harm."

**{¶71}** Here, each of appellant's offenses inflicted separate, identifiable harm, as discussed in *Ruff, supra*. The state identified each of these separate acts in the Bill of Particulars. Based on Melinda's testimony, the photographs of her injuries, and the medical records, she sustained three gunshot wounds to the chest and abdomen (attempted murder). She also sustained a gunshot wound to her leg (felonious assault). In addition, as the trial court found, the cell phone was shot out of her hand, causing her to sustain hand injuries (felonious assault). And, when she decided to try to leave, she stood up and a bullet grazed the top of her head (attempted murder). As a result, pursuant to *Ruff*, the trial court did not err in not merging these offenses.

**{¶72}** Next, appellant argues the trial court erred in not merging the firearm specifications because, in his view, all of them were allied and should have been merged. "[T]his matter turns upon the correct application of a statute providing that

15

multiple prison terms for certain firearm specifications can be served consecutively." *State v. Fortune*, 11th Dist. Lake No. 2014-L-117, 2015-Ohio-4019, ¶16. This is an issue of law, which we review de novo. *Id.* Further, if that statute applies, it is unnecessary to conduct a merger analysis. *Id.*

{¶73} Here, appellant was found guilty of four firearm specifications. R.C. 2929.14(B)(1)(b) provides: "If a court imposes a prison term on an offender under division (B)(1)(a) of this section [providing sentences for firearm specifications], * * * [e]xcept as provided in division (B)(1)(g) of this section, a court shall not impose more than one prison term on an offender under division (B)(1)(a) of this section for felonies committed as part of the same act or transaction." As noted within that provision, however, R.C. 2929.14(B)(1)(g) provides for an exception, as follows:

> {¶74} If an offender is convicted of * * * two or more felonies, if one or more of those felonies are * * * attempted murder * * * [or] felonious assault, * * * and if the offender is convicted of * * * a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted * * * and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

{¶75} "Under this provision, the sentencing court must impose a prison term for two specifications, * * * but may also choose to impose a term for remaining specifications." *Fortune* at ¶18. "As stated in (B)(1)(b), the same act or transaction requirement does not apply under such circumstances." *Fortune, supra*.

{¶76} "Based on this exception, courts have held that a sentence is permissible on more than two specifications, without considering whether the conduct was part of the same act or transaction." *Fortune* at ¶19.

16

{¶77} Here, appellant was found guilty of four firearm specifications for his attempted murder and felonious assault convictions, pursuant to R.C., 2929.14(B)(1)(g), which required the court to sentence him on at least two of the specifications. Since the two most serious of these felonies were the attempted murder convictions, the trial court was required to impose a three-year prison term for the specifications to the two counts of attempted murder and had the discretion to also impose three-year terms for the specifications to the two felonious-assault counts.

{¶78} In imposing a three-year term on each specification, the trial court complied with R.C. 2929.14(B)(1)(g) and, thus, did not err in not merging them.

{¶79} Appellant's second and third assignments of error are overruled.

{¶80} For his fourth assigned error, appellant argues:

{¶81} "The trial court erred when it failed to grant appellant's motion to dismiss; which motion alleged that appellant's rights to presentment and fair trial as guaranteed by Article I, Section 10 of the Ohio Constitution and Amend. (sic.) V and VI of the United States Constitution were violated when it reinstated counts upon remand which were not previously subject to appeal."

{¶82} This court, in *Bozek II*, stated:

{¶83} [W]hile we hold that appellant's conviction is void, he is not entitled to the relief he seeks. In the conclusion of appellant's brief, he "asks that this Court * * * [f]ind that Appellant's plea to the Attempted Felony Murder in Count Two is a nullity and that count two of the indictment is void and remand the case to the trial court for resentencing on the one remaining count ([Attempted] Purposeful Murder) * * * and the accompanying Firearm Specification." Thus, appellant asks that we find that only his plea to attempted felony murder is void and that we remand for resentencing only on his plea to attempted purposeful murder.

17

{¶84} The Second District addressed this issue in *State v. Peck*, 2d Dist. Clark No. 1221, 1978 WL 216148 (Aug. 2, 1978), in which the court stated:

{¶85} When a plea is vacated * * *, the vacation and reversal is complete as to all portions of the bargain. Both the defendant and the State are in the same position as if no agreement had been made and as if no action had been taken by the trial court on the agreement. Where more than one separate offense is involved in the agreement, all so involved may be reinstated upon vacation of the agreement. Re-indictment by the grand jury is not necessary because upon vacation all are still pending. *Id.* at *3.

{¶86} Thus, despite appellant's request that we only find his plea to attempted felony murder is void, appellant's guilty plea is void in its entirety and vacated as to all parts. On remand, the parties shall be in the same position as if no plea agreement had been entered and the trial court had not taken any action on the plea, and all counts of the indictment and the supplemental indictment shall be reinstated. *Bozek II, supra*, at ¶24-27.

{¶87} As noted, appellant filed a notice of appeal to the Ohio Supreme Court challenging this decision, and the Supreme Court declined to accept jurisdiction of the appeal. Since this court previously rejected appellant's argument that only part of the plea bargain was void in *Bozek II*, it is now barred by the law of the case doctrine. *Nolan v. Nolan*, 11 Ohio St.3d 1, 3-4 (1984). For this reason alone, the assignment of error lacks merit.

{¶88} In any event, in making this argument, appellant confuses the "sentencing package doctrine" (which allows a defendant to appeal one count of his sentence without the entire sentence being vacated) with the law that a plea bargain is to be analyzed under contract principles so that when a plea bargain is vacated, the bargain is vacated in its entirety. *State v. Burks*, 10th Dist. Franklin No. 04AP-531, 2005-Ohio-1262, ¶19-21. Thus, even if this argument was not barred by the law of the case doctrine, it would fail on its merits.

18

{¶89} Appellant's fourth assignment of error is without merit.

{¶90} For appellant's fifth and final assignment of error, he contends:

{¶91} "The trial court erred by imposing consecutive sentences on the counts of conviction and the attendant firearm specifications for reason that (sic.) consecutive sentences were not justified by R.C. 2929.14(C)(4); all in violation of appellant's right to due process and the protection of the Double Jeopardy Clause of the U.S. Constitution."

{¶92} Appellant does not dispute that the trial court made all necessary findings for consecutive sentences under R.C. 2929.14(C)(4). Instead, he argues that if this court accepts his argument that all the offenses of which he was convicted are allied offenses of similar import, consecutive sentence would not have been justified. However, because we hold the offenses of which appellant was convicted were not allied, his argument lacks merit.

{¶93} Appellant's fifth assignment of error is without merit.

{¶94} For the reasons stated in this opinion, the assignments of error lack merit and are overruled. It is the order and judgment of this court that the judgment of the Portage County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON, J., concurs,

THOMAS R. WRIGHT, P.J., concurs with a Concurring Opinion.

_____

THOMAS R. WRIGHT, P.J., concurs with a Concurring Opinion.

{¶95} I concur with the majority's disposition on all assignments but write separately as to assignments two and three.

19

**{¶96}** As outlined in *Ruff*, "courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?" *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶31. An affirmative response to any of these precludes merger. *Id.*

**{¶97}** I answer both the first and second questions in the affirmative. Appellant pulled the trigger at least six times causing at least six separate and identifiable harms. The answers to those questions remain the same regardless of the amount of time that passes between the separate acts and harms.

**{¶98}** *Ruff* does not refer to or discuss the amount of time between the acts and harms as dispositionally relevant. They can occur simultaneously, in quick succession, or over minutes, hours, days, or years. Any reliance on the time between is irrelevant.